1
2
3
4
5            UNITED STATES DISTRICT COURT
6            EASTERN DISTRICT OF WASHINGTON

7   STANTON HARRY MCCAIN, II,
                                        NO. 4:18-CV-5174-TOR
8                  Plaintiff,
                                        ORDER GRANTING DEFENDANTS'
9         v.                            MOTION FOR SUMMARY
                                        JUDGMENT
10  DEPARTMENT OF
    CORRECTIONS; FRANK JOHN
11  SMITH, M.D.; STEPHEN
    SINCLAIR; DONALD
12  HOLBROOK; STEVEN
    HAMMOND, M.D.; LISA
13  KLEMME; and KAREN FORSS,

14                 Defendants.

15

16      BEFORE THE COURT is Defendants' Motion for Summary Judgment

17  (ECF No. 71).  This matter was submitted for consideration without oral argument.

18  The Court has reviewed the record and files herein, the completed briefing, and is

19  fully informed.  For the reasons discussed below, Defendants' Motion for

20  Summary Judgment (ECF No. 71) is GRANTED.


    ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
    JUDGMENT ~ 1

# BACKGROUND

This case concerns alleged violations of Plaintiff's Eighth Amendment rights, and the Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA"), while Plaintiff was confined to an Intensive Management Unit ("IMU") cell at Airway Heights Corrections Center for 85 days. ECF No. 45. On or about April 11, 2018, Plaintiff was transferred to the IMU after receiving an infraction for threatening another incarcerated individual. ECF No. 72 at 2, ¶ 2, at 6, ¶ 14. The IMU houses inmates on Disciplinary Segregation, Administrative Segregation Referral, or Maximum Custody. *Id*. at 5, ¶ 10. Prior to being sent to the IMU, Plaintiff underwent a Nursing Assessment to ensure he was medically suitable for housing in the IMU. *Id*. at 7, ¶ 15; ECF No. 74-18. Individuals who are not able to stand or ambulate in the IMU are placed in the inpatient unit of the health services building. ECF No. 72 at 7, ¶ 15. Plaintiff was deemed medically suitable for housing in the IMU. ECF No. 74-18 at 3.

Individuals housed in the IMU are closely monitored by IMU staff. ECF No. 72 at 5, ¶ 10. Staff members conduct frequent and random security checks, which include visual observation of the incarcerated individual and their cell. *Id*. Individuals can incur infractions for failing to comply with IMU rules, such as placing blankets or bedlinens on the floor. *Id*. at 6, ¶ 13. Additionally, IMU staff interact with incarcerated individuals three times daily to distribute meals. *Id*. at 5,

¶ 11.  Individuals who wish to receive meal services are required to turn on their cell light, step toward the doorway, and remain behind the safety line.  *Id*. Similarly, medical staff also perform daily wellness checks.  *Id*. at 6, ¶ 12.  During those checks, individuals have the opportunity to request medical assistance or discuss medical concerns.  *Id*.  Any concerns raised by the individual or noted by medical staff are recorded on a Daily Report of Segregated Offender.  *Id*.

Plaintiff was initially scheduled to remain in the IMU for 20 days, but he refused to be returned to general population on two occasions.  ECF No. 72 at 7, ¶ 17–18.  His confinement to IMU was extended until July 6, 2018 for a total confinement period of 85 days.  *Id*. at 9, ¶ 22.  During that time, Plaintiff contacted prison staff and administrators on several occasions regarding his use of a wheelchair, which he was not permitted to use while in his IMU cell.  *Id*. at 8, ¶ 19–21; 45 at 5.  Metal wheelchairs pose a security concern due to the metal parts, such as spokes, which can be removed or altered for use as a weapon.  *Id*. at 4, ¶ 11.  Prison staff responded to Plaintiff's letters that raised issues regarding his medical care and indicated he would need to discuss his medical concerns with custody staff.  *Id*. at 8, ¶ 19; 76-3.  Plaintiff refused to see medical providers to discuss his concerns.  *Id*. at 8, ¶ 20.  Plaintiff also raised other issues to prison administrators relating to other prison facilities.  *Id*. at ¶ 21.  Those concerns are beyond the scope of this motion and will not be addressed by the Court.

1    Defendants filed the present motion seeking summary judgment on all of

2  Plaintiff's claims.  ECF No. 71.  Plaintiff opposes the motion, and also requests the

3  Court defer its consideration of the motion until Plaintiff is able to submit

4  additional evidence.  ECF No. 83.

**DISCUSSION**

5

6  **I.    Legal Standard**

7    The Court may grant summary judgment in favor of a moving party who

8  demonstrates "that there is no genuine dispute as to any material fact and that the

9  movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In ruling

10  on a motion for summary judgment, the court must only consider admissible

11  evidence.  *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).  The

12  party moving for summary judgment bears the initial burden of showing the

13  absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

14  317, 323 (1986).  The burden then shifts to the non-moving party to identify

15  specific facts showing there is a genuine issue of material fact.  *See Anderson v.

16  Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "The mere existence of a scintilla

17  of evidence in support of the plaintiff's position will be insufficient; there must be

18  evidence on which the jury could reasonably find for the plaintiff."  *Id*. at 252.

19    For purposes of summary judgment, a fact is "material" if it might affect the

20  outcome of the suit under the governing law.  *Id.* at 248.  Further, a dispute is

"genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* The Court views the facts, and all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Summary judgment will thus be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

A *pro se* litigant's contentions offered in motions and pleadings are properly considered evidence "where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [a litigant] attest[s] under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (allegations in a *pro se* plaintiff's verified pleadings must be considered as evidence in opposition to summary judgment). Conversely, unverified pleadings are not treated as evidence. *Contra Johnson v. Meltzer*, 134 F.3d 1393, 1399–400 (9th Cir. 1998) (verified motion swearing that statements are "true and correct" functions as an affidavit); *Schroeder v. McDonald,* 55 F.3d 454, 460 n.10 (9th Cir. 1995) (pleading counts as "verified" if drafter states under penalty of perjury that the contents are true and correct). Although *pro se* pleadings are held to less stringent standards than those prepared by attorneys, *pro se* litigants in an ordinary

1  civil case should not be treated more favorably than parties with attorneys of

2  record.  *See Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986).

3  ### A.  Construed Motion for Extension of Time

4  As an initial matter, Plaintiff appears to move for an extension of time so

5  that he may submit additional evidence he has yet to receive through his public

6  records requests.  ECF No. 83 at 22.  Plaintiff's request is **denied**.  First, the time

7  for discovery ended on May 28, 2021.  ECF No. 61 at 3.  Plaintiff has not offered

8  any basis for extending discovery beyond the cutoff date.  Second, Plaintiff has

9  failed to seek a continuance of the summary judgment motion pursuant to Rule

10  56(d), which permits courts to defer consideration of the motion if the nonmoving

11  party can specify by affidavit or declaration why it cannot present facts essential to

12  justify its opposition to the motion.  Fed. R. Civ. P. 56(d).  Plaintiff merely states

13  that his documents have not yet arrived.  ECF No. 83 at 22.  Notably, Plaintiff did

14  not submit these particular records requests until well after the discovery cutoff

15  date.  *See id*. at 70, 79, 81, 102.  For these reasons, the Court will not extend the

16  discovery deadlines and will proceed with its ruling on Defendants' motion.

17  ### B.  Eighth Amendment Claim

18  Defendants move for summary judgment on Plaintiff's Eighth Amendment

19  claim on the grounds that Plaintiff cannot demonstrate his condition was

20  sufficiently serious to implicate an Eighth Amendment violation or that Defendants

1  possessed the requisite knowledge to trigger liability.  ECF No. 71 at 3–4.  Plaintiff

2  argues he suffers from several medical conditions that entitle him to medical

3  treatment and that Defendants denied Plaintiff his proper medical treatment,

4  leading to further injury and harm.  ECF No. 45 at 8–16.

5       It is well settled that "the treatment a prisoner receives in prison and the

6  conditions under which he is confined are subject to scrutiny under the Eighth

7  Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted).  In

8  addition to its prohibition against "cruel and unusual punishments," the Eighth

9  Amendment imposes a duty upon prison officials to provide "humane conditions of

10  confinement," including adequate food, clothing, shelter, and medical care.  *Id*.  To

11  establish a violation of the Eighth Amendment premised on prison medical

12  treatment, an inmate must show "deliberate indifference to serious medical needs."

13  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted).

14       "In the Ninth Circuit, the test for deliberate indifference consists of two

15  parts." *Id*.  First, the prisoner must show a "serious medical need" by

16  demonstrating the failure to treat the condition will result in "further significant

17  injury or the unnecessary and wanton infliction of pain."  *Id*. (citation and internal

18  quotations omitted).  Second, the prisoner must demonstrate the prison official

19  acted with deliberate indifference.  *Id*.  Deliberate indifference is shown by: (1) a

20  purposeful act or failure to respond to a prisoner's pain or possible medical need,

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 7

1    and (2) a resulting harm.  *Id*.  For example, a prison official acts with deliberate

2    indifference in denying, delaying, or intentionally interfering with a prisoner's

3    medical treatment.  *Id*.  Inadvertent or negligent failures to provide adequate

4    medical care are insufficient to establish liability under the Eighth Amendment.

5    *Id*.  Isolated incidents in a prisoner's overall medical treatment history are also

6    generally insufficient for an Eighth Amendment violation.  *Id*.

7                          *1.    Serious Medical Need*

8              As to the first prong, Plaintiff claims he suffers from several medical

9    conditions that render him unable to walk or stand, and he is thus, dependent upon

10   a wheelchair.  ECF No. 45 at 7–8.  Specifically, Plaintiff claims to suffer from

11   chronic coronary artery disease, angina, a "spinal birth defect," and several joint

12   and bone issues that have required surgery or other medical treatments over the

13   years (e.g., foot and shoulder reconstructive surgery).  *Id*. at 8.  Plaintiff argues an

14   "unbiased medical review" would demonstrate his conditions worsened during his

15   time in IMU because he was forced to over-exert himself when Defendants' denied

16   him use of a wheelchair.  *Id*. at 8–9.

17            Plaintiff submitted numerous documents to support his claims of serious

18   medical needs.  *See generally* ECF No. 83.  However, the documents do not

19   support the severity of impairment Plaintiff claims.  For example, a thorough

20   medical examination conducted on October 5, 2011, which included an extensive

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 8

review of Plaintiff's medical history, revealed some health complications (e.g., severe coronary disease, possible anxiety and adjustment disorders, polyarthralgia and degenerative joint disease of the cervical thoracic and lumbar spine), but specifically stated Plaintiff "does not have organic paralysis of the lower extremities at this time."  ECF No. 83 at 145–46.  Moreover, the treatment plan indicated Plaintiff should undergo consultations for physical therapy, occupational therapy, and mental health to determine whether Plaintiff "should be encouraged to go back to a walker and get him out of the wheelchair."  *Id*. at 146.

Of the documents submitted by Plaintiff that relate specifically to Plaintiff's wheelchair concerns is a letter from the prison Ombuds, issued over six weeks after Plaintiff was released from IMU.  *Id*. at 67.  While the Ombuds "substantiated" Plaintiff's complaint after evaluating Plaintiff's case and interviewing Department of Health Services and Prisons staff, the Ombuds does not cite to any medical evaluations or consultations with Plaintiff's care providers to support his conclusions.  *Id*.  Notably, the letter acknowledges that Department of Health Services and Prison staff had concerns about whether Plaintiff required the use of a wheelchair while in his cell.  *Id*.  Moreover, the Ombuds did not consult with IMU staff regarding any potential safety concerns they may have had that related to in-cell wheelchair access.  *See* ECF No. 75 at 4, ¶ 11.  Thus, a single letter unsupported by any medical evidence or evidence of a thorough investigation

is insufficient to corroborate Plaintiff's claim of a serious medical need that would require use of a wheelchair in his cell.  The remaining documents submitted by Plaintiff relate primarily to his complaints about other conditions of his confinement or records requests pertaining to this litigation.  *See, e.g.*, ECF No. 83 at 99–114.

Conversely, Defendants have submitted additional medical records and internal care records to support their contention that Plaintiff does not suffer from a serious medical need that requires further treatment beyond what Plaintiff is already receiving.  A review of these records reveals that Plaintiff does suffer from several medical conditions, but those conditions have been, and continue to be, well-monitored and treated.  For example, Plaintiff underwent shoulder surgery in September 2006, which resulted in "good improvement with that shoulder" and "no evidence of recurrent instability."  ECF No. 74-4 at 3.  In June 2011, after presenting with chest pains, Plaintiff was evaluated with an EKG, which did not reveal any evidence of acute ischemia; Plaintiff was discharged without pain symptoms and directed to get a stress test one week later.  ECF No. 74-5 at 3.  It is unclear whether Plaintiff followed through with the stress test.

More importantly, the objective medical evidence does not support Plaintiff's claims of serious medical needs.  Regarding Plaintiff's alleged spinal injury from sometime in 1999, several imaging studies were conducted on or about

June 13, 2008 to evaluate his conditions, which resulted in generally benign and unremarkable findings.  ECF No. 74-4 at 3–4.  Towards the end of June 2008, Plaintiff continued to complain of significant pain in his lower extremities to the point of not being able to walk, despite no objective medical evidence of a severe or debilitating injury.  ECF No. 74-4 at 4.  Curiously, Plaintiff also complained of restless leg syndrome around that same time period and demonstrated the condition to a nurse by "tossing his legs from side to side as well as up and down, right and left legs."  *Id*.  An evaluation in June 2011 continued to show generally benign and unremarkable findings with regard to Plaintiff's alleged conditions.  *See id*. at 6 (impressions indicated Plaintiff's alleged paralysis was likely "somatization and not an organic paralysis" because it was " inconsistent with the lack of bowel or bladder incontinence, as well as the irregularities of his history in which he was noted to be moving his right lower extremity").

As to his alleged heart conditions, reviews of Plaintiff's chest images and medical records in 2011 indicated his chest pains were not likely cardiac in nature as his symptoms were inconsistent with angina due to ischemia and atypical for acute coronary syndrome.  ECF Nos. 74-4 at 6; 74-5 at 3; 74-6 at 2.  Plaintiff's medical history after July 2011 becomes less clear because he began to refuse treatments, medications, and evaluations.  *See* ECF Nos. 74-7 at 2; 74-12 at 5; 74-16 at 2.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 11

1    Based on the objective medical evidence in the record, there is no genuine

2    issue of material fact regarding Plaintiff's medical needs.  While he has several

3    medical conditions, none rise to the level of a serious medical need that will result

4    in further injury or cause wanton pain if left untreated.  In fact, any failure to treat

5    Plaintiff's medical conditions appear to come at the behest of Plaintiff himself, not

6    Defendants, who have routinely attended to Plaintiff's symptoms and complaints.

7    Plaintiff cannot create a genuine issue of material fact simply by disagreeing with

8    the medical experts and Defendants' decisions in light of the expert advice.  *Scott*

9    *v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different

10   stories, one of which is blatantly contradicted by the record, so that no reasonable

11   jury could believe it, a court should not adopt that version of the facts for purposes

12   of ruling on a motion for summary judgment.").

13              *2.        Deliberate Indifference*

14   Plaintiff alleges Defendants knew he required use of a wheelchair for his

15   serious medical needs as evidenced by his Health Status Reports ("HSR") in place

16   at the time, and that Defendants purposely denied Plaintiff access to the

17   wheelchair, causing Plaintiff to "suffer inhumanely."  ECF No. 45 at 9–11.  To

18   support his argument, Plaintiff submitted the relevant HSRs in place at the time

19   (ECF No. 83 at 63, at 64, at 65) as well as letters he wrote to several Defendants

20   outlining his wheelchair concerns (ECF No. 45 at 22, at 28, at 30, at 32, at 39).

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 12

1   Plaintiff's argument and supporting evidence misinterprets the knowledge

2   required to sustain an Eighth Amendment claim.  Knowledge of an inmate's

3   complaints and disagreements with medical opinions is insufficient.  *Toguchi v.*

4   *Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004).  Rather, Plaintiff must demonstrate

5   Defendants had knowledge of facts from which an inference could have been

6   drawn that a substantial risk of harm existed, and Defendants must have actually

7   drawn those inferences.  *Id*. at 1957 (citing *Farmer v. Brennan*, 511 U.S. 825, 837

8   (1994)).  Here, the evidence in the record shows Defendants were not aware of any

9   serious medical need that would affect Plaintiff's health and safety if left untreated.

10  Conversely, the record demonstrates Defendants regularly provided Plaintiff with

11  adequate medical care, even when Plaintiff refused medical treatments and

12  examinations.

13  To illustrate, prison and medical staff interact with inmates in IMU on a

14  daily basis.  ECF No. 72 at 5–6, ¶ 11–12.  Food services are delivered three times

15  daily, during which the inmate is directed to turn on their cell light and stand

16  behind the safety line.  *Id*. at 5, ¶ 11.  Failure to comply would result in an

17  infraction.  *Id*. at 7, ¶ 16.  Similarly, wellness checks are conducted once daily.  *Id*.

18  at 6, ¶ 12.  Any concerns raised by the inmates or medical staff are documented on

19  a daily report.  *Id*.  The daily report would also contain "medical observations" or

20  "unusual occurrences and/or behaviors."  *Id*.  Plaintiff's allegations that he was

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 13

forced to sleep on the floor or that he had to drag himself across the floor are not documented in any report. *Id*. at 7, ¶ 16. Plaintiff was also never infracted for failing to comply with food service requirements. *Id*. Thus, Defendants had no reason to be aware of a serious medical condition threatening Plaintiff's health and safety.

Plaintiff alleges he provided "formal notice" to Defendants Sinclair, Hammond, and Holbrook of the "horrific sufferings" he endured while in IMU. ECF Nos. 45 at 11; 83 at 37. Defendants argue Plaintiff's letters did not contain specific information that would have led to knowledge of Plaintiff's alleged medical needs. ECF No. 71 at 10. For example, neither letter cited by Plaintiff contains references to Defendant Hammond. *See* ECF No. 45 at 22–23, at 32. Plaintiff has also failed to identify, or provide evidence of, any particular knowledge Defendant Hammond had of Plaintiff's alleged medical conditions. *See* ECF No. 83 at 2–60.

Similarly, one letter allegedly providing notice to Defendant Sinclair contains no reference to Defendant Sinclair (ECF No. 45 at 22–23), and the other letter purportedly giving notice to Defendant Sinclair contains no mention of Plaintiff's concerns about his wheelchair while in IMU (*id*. at 32). The same two letters allegedly provided notice to Defendant Holbrook. However, as noted, the

1    second letter does not mention Plaintiff's wheelchair concerns, and it is unclear

2    whether the first letter even reached Defendant Holbrook.  ECF No. 71 at 11.

3         Moreover, Plaintiff's Care Conference notes indicate Plaintiff's medical care

4    providers were working closely with prison officials to ensure Plaintiff's medical

5    needs were being met.  ECF Nos. 74-3; 74-7; 74-8.  While these conference notes

6    are dated several years prior to the relevant time period, they do establish

7    Plaintiff's health and safety were well-cared for.  Notably, they also indicate

8    Plaintiff has a history of disruptive and manipulative behavior, particularly related

9    to his use of a wheelchair.  Based on the evidence in the record, Defendants

10   Sinclair, Hammond, and Holbrook could not have possessed the requisite

11   knowledge to trigger Eighth Amendment liability.

12        As to Defendants Forss and Klemme, Plaintiff has failed to demonstrate

13   what specific knowledge either Defendant possessed regarding Plaintiff's need of a

14   wheelchair while in IMU.  Defendant Forss does not recall taking part in the

15   determination of Plaintiff's wheelchair use while in IMU.  ECF No. 77 at 2, ¶ 4.

16   She does recall interviews with Plaintiff and medical staff in August 2018, about

17   one month after Plaintiff was moved out of IMU, during which Defendant Forss

18   determined Plaintiff's disagreements and concerns regarding his medical care

19   related primarily to his own refusals of care, not a failure to treat a serious medical

20   condition.  *Id*. at ¶ 5.  Defendant Klemme is the ADA Compliance Manager for

1    DOC. *Id*. at 2, ¶ 4. She is not a medical care provider, nor does she partake in

2    medical care determinations for inmates. To the extent Plaintiff's letters to

3    Defendant Klemme raised medical concerns, the letters were forwarded to the

4    Correspondence Unit. *Id*. Thus, she could not have acted with deliberate

5    indifference to Plaintiff's serious medical needs because those matters fell outside

6    of her purview. Plaintiff has failed to establish that Defendants Forss and Klemme

7    possessed the requisite knowledge to trigger Eighth Amendment liability.

8          Finally, Plaintiff has likewise failed to establish that Defendant Dr. Smith

9    possessed knowledge of any serious medical need. Dr. Smith conducted several

10   thorough medical exams of Plaintiff and reviewed his medical history, concluding

11   there was no objective medical evidence to support Plaintiff's alleged inability to

12   walk. *Id*. at 2, ¶¶ 4–5; at 8, ¶ 26. Dr. Smith's opinion was also based on Plaintiff's

13   behavior during his time in IMU, which did not include any documentation that

14   would have raised serious medical concerns. ECF No. 71 at 14. Moreover, Dr.

15   Smith does not recall partaking in the decision regarding Plaintiff's wheelchair; it

16   appears to have been decided by another care provider. *Id*. at 13–14.

17          Based on the evidence in the record, Plaintiff has failed to create a genuine

18   issue of material facts as to whether Defendants acted with deliberate indifference

19   to Plaintiff's alleged serious medical needs. Defendants are entitled to summary

20   judgment on Plaintiff's Eighth Amendment claim.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 16

1

2

**C.     Americans with Disabilities Act and Rehabilitation Act Claims**

3

4

5

6

7

8

Plaintiff alleges Defendants violated the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") by denying him access to a wheelchair while he was confined to IMU for 85 days.  ECF No. 45 at 9–10.  Defendants argue Plaintiff's ADA and RA claims fail because they are premised on issues relating to adequate medical treatment, not allegations of disability discrimination, and because Plaintiff cannot prove intentional discrimination.  ECF No. 71 at 16.

9

10

11

12

13

14

15

16

17

18

19

20

Title II of the ADA prohibits a public entity from discriminating against individuals based on their disability status.  42 U.S.C. § 12132; *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).  To state a claim for disability discrimination, a plaintiff must allege: (1) that the plaintiff is an individual with a disability, (2) the plaintiff is qualified to participate in or receive the benefit of the public entity's services, programs, or activities, (3), the plaintiff was excluded from participation or denied the benefits of the public entity's services, programs, or activities, and (4) the exclusion, denial of benefits, or discrimination was based on the plaintiff's disability.  *Id*.  The RA, which applies to programs or activities that receive federal funding, similarly prohibits discrimination based on disability.  *Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir. 1997).  The requirements to state a claim under the RA are substantially similar to the ADA.  *Collings v.*

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 17

1    *Longview Fibre Co.*, 63 F.3d 828, 832 n.3 (9th Cir. 1995); *Wright v. N.Y. State*

2    *Dep't of Corr.*, 831 F.3d 64, 72–73 (2d Cir. 2016).

3          Here, Plaintiff has not submitted any evidence demonstrating his claim

4    meets the elements required for an ADA and RA claim.  With regard to the first

5    element, courts are to resolve issues of disability by construing the definition in

6    favor of broad coverage, "to the maximum extent permitted by the terms of [the]

7    chapter." 42 U.S.C. § 12102(4)(A); *Munoz v. California Dep't of Corr. & Rehab.*,

8    842 F. App'x 59, 61 (9th Cir. 2021).  Plaintiff has not submitted any

9    documentation of a finding of disability.  He relies primarily on his HSRs, which

10   list a wheelchair as his durable medical equipment, and his communications with

11   DOC administrators and Disability Rights Washington regarding his concerns

12   about his wheelchair access, to support his claimed disability.  ECF No. 83 at 63–

13   64, at 67, at 91, at 98, at 175–79, at 162–64.  A review of the evidence indicates

14   there were legitimate questions regarding Plaintiff's claimed inability to walk.  *See,*

15   *e.g.*, ECF Nos. 74-4; 74-8.  In any event, the Court does not find it necessary to

16   make a determination regarding Plaintiff's alleged disability because his claim fails

17   in other respects.

18         Defendants argue Plaintiff has not identified any services, programs, or

19   activities from which he was excluded or that his exclusion was caused by

20   discrimination based on his disability.  Plaintiff has alleged he was unable to

access the sink or bed in his cell and was unable to retrieve his meals and

medications.  ECF No. 45 at 10.  Access to food, medication, and his cell bed and

sink are certainly services to which Plaintiff was entitled while confined in IMU.

However, the evidence in the record does not substantiate Plaintiff's claims that he

was unable to access these services without a wheelchair.

For example, Plaintiff underwent a medical evaluation before he was sent to

IMU, which indicated he was medically suitable for placement in the IMU.  ECF

No. 72 at 7, ¶ 15.  Inmates who cannot stand or ambulate in an IMU cell are

housed in the inpatient unit.  *Id*.  Additionally, Plaintiff's DOC records do not

contain any evidence that he was unable to stand to retrieve his meals or

medication, or that was sleeping on the floor.  *Id*. at ¶ 16.  Any such behavior or

conditions would have been noted in Plaintiff's daily wellness evaluations or his

infraction records.  *Id*.  Finally, while Plaintiff's HSR was renewed for wheelchair

access when he was confined to IMU, DOC medical staff indicated Plaintiff would

need to "contact [custody staff] about the IMU restrictions" and that Plaintiff

would be scheduled for a medical appointment to address his mobility concerns.

*Id*. at 8, ¶ 20.  When the time came for his appointment, Plaintiff refused to attend.

*Id*.  Plaintiff has failed to meet the elements necessary to prove an ADA or RA

claim.

Alternatively, Plaintiff's ADA and RA claim also fails because he has not

proven Defendants intentionally discriminated against him because of his

disability.  In the Ninth Circuit, it is unclear whether intentional discrimination can

be demonstrated by proving discriminatory animus or if deliberate indifference is

sufficient.  *Memmer v. Marin Cty. Cts.*, 169 F.3d 630, 633 (9th Cir. 1999).  Either

way, Plaintiff has failed to prove even deliberate indifference.

Consequently, viewing the evidence in a light most favorable to Plaintiff,

there are no genuine issues of material fact as to whether Plaintiff was excluded

from programs, services, or activities to which he was entitled due to his inability

to use his wheelchair while confined in IMU.  Defendants are entitled to summary

judgment on Plaintiff's ADA and RA claim.

### D.        Construed Request for Injunctive Relief

Plaintiff requests the Court "follow-up" with Defendants to ensure Plaintiff's

medical needs are being met.  ECF No. 45 at 16.  Defendants move for summary

judgment on Plaintiff's construed request for injunctive relief on the grounds that it

does not comport with the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. §

3626, because the relief sought is not tailored to the alleged violation.  ECF No. 71

at 17.

In the context of the PLRA, courts may grant preliminary injunctive relief

that is narrowly drawn, extends no further than necessary to correct the harm, and

is the least intrusive means necessary.  18 U.S.C. § 3626(a)(1)–(2).  Those

1    requirements are known as the "need-narrowness-intrusiveness" requirements.  *See*

2    *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1070 (9th Cir. 2010).  Courts must

3    make need-narrowness-intrusiveness findings "sufficient to allow a clear

4    understanding of the ruling."  *Edmo v. Corizon, Inc.*, 935 F.3d 757, 783 (9th Cir.

5    2019).  However, the Ninth Circuit has never required such findings to be so

6    specific as to require a provision-by-provision explanation; rather, "overall

7    statements by the district court that the need-narrowness-intrusiveness standard has

8    been met" are sufficient.  *Armstrong*, 622 F.3d at 1070–71.  "What is important,

9    and what the PLRA requires, is a finding that the set of reforms being ordered—the

10    'relief'—corrects the violations of prisoners' rights with the minimal impact

11    possible on defendants' discretion over their policies and procedures."  *Id*. at 1071.

12        Having determined that Defendants have provided, and continue to provide,

13    adequate medical care to Plaintiff, Plaintiff's construed request for injunctive relief

14    is unwarranted.  An order requiring general oversight into Plaintiff's care would

15    not be narrowly drawn to the alleged harm, i.e., that Plaintiff was denied access to

16    a wheelchair while confined to his IMU cell for 85 days, and would unnecessarily

17    intrude upon Defendants' ability to efficiently operate its prison system.  *See*

18    *Armstrong*, 622 F.3d at 1071.  Defendants are entitled to summary judgment on

19    Plaintiff's construed request for injunctive relief.

20

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 21

1    **II.    Qualified Immunity**

2       Defendants argue they are entitled to qualified immunity from damages

3    because they did not have any reason to know their conduct violated a clearly

4    established law nor were they on notice of any conditions that violated Plaintiff's

5    rights.  ECF No. 71 at 18.

6       Qualified immunity shields government actors from civil damages unless

7    their conduct violates "clearly established statutory or constitutional rights of

8    which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S.

9    223, 231 (2009).  In evaluating a state actor's assertion of qualified immunity, a

10   court must determine: (1) whether the facts, viewed in the light most favorable to

11   the plaintiff, show that the defendant's conduct violated a constitutional right; and

12   (2) whether the right was clearly established at the time of the alleged violation

13   such that a reasonable person in the defendant's position would have understood

14   that his actions violated that right.  *Saucier v. Katz,* 533 U.S. 194, 201–02 (2001),

15   *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).  The

16   second prong of the *Saucier* analysis must be "undertaken in light of the specific

17   context of the case, not as a broad general proposition."  *Mullenix v. Luna*, 577

18   U.S. 7, 12 (2015).  "Only when an officer's conduct violates a clearly established

19   constitutional right—when the officer should have known he was violating the

20   Constitution—does he forfeit qualified immunity."  *Lacey v. Maricopa Cty.*, 693

F.3d 896, 915 (9th Cir. 2012).  Courts may address the two-prong analysis in any order.  *Pearson*, 555 U.S. at 237–242.

Regarding the first prong, deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment.  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted).  However, the Court has already determined that Plaintiff failed to create a genuine issue of material fact as to whether Defendants acted with deliberate indifference to Plaintiff's medical needs.  Defendants routinely evaluated and cared for Plaintiff's medical needs, even when Plaintiff began refusing medical treatment and evaluations.  ECF No. 72 at 7, ¶ 16, at 8, ¶ 20.  Moreover, Defendants' decision to deny Plaintiff's access to a wheelchair was based on legitimate medical care opinions, which indicated a wheelchair was not medically necessary.  ECF Nos. 71 at 18; 74-4.  *See Thomas v. Quintana*, 672 Fed. Appx. 657, 660 (9th Cir. 2016) (finding qualified immunity where prison medical officials determined the medical equipment at issue was not medically necessary).  Thus, Defendants are entitled to qualified immunity where there is no constitutional violation; the Court need not address the second prong of the *Saucier* analysis.  *Rodriguez v. Maricopa Cnty. Cmty. Coll. Dist.,* 605 F.3d 703, 711 (9th Cir.2010) (a defendant is entitled to qualified immunity if there is no constitutional violation).

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment (ECF No. 71) is **GRANTED**.

2. Plaintiff's construed request for an extension of time is **DENIED**.

3. Plaintiff's *in forma pauperis* status is **REVOKED**.

4. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal of this Order would not be taken in good faith and would lack any arguable basis in law or fact.

The District Court Executive is directed to enter this Order, enter judgment for Defendants, furnish copies to the parties, and **close** the file.

DATED September 20, 2021.



THOMAS O. RICE
United States District Judge

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 24